UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRADE LINKS, LLC ) | CASE NO. 3:19-CV-00308 (KAD) |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| BI-QEM SA de CV, ET AL. ) | MARCH 27, 2023 |
| *Defendants*. ) | |

**MEMORANDUM OF DECISION**
**RE: MOTIONS FOR ATTORNEYS' FEES (ECF NOS. 263 & 266)**

Kari A. Dooley, United States District Judge:

This case arises out of the breakdown of a two-decades-long contractual business relationship between the Plaintiff, Trade Links, LLC, and the Defendants, Bi-Qem SA de CV and Bi-Qem, Inc (together, "Defendants"). After a jury trial, the jury returned a verdict in Plaintiff's favor on two of its claims: breach of contract and breach of the implied covenant of good faith and fair dealing, and judgment accordingly entered in favor of Plaintiff and against Defendants. Pending before the Court are the parties' motions for attorneys' fees and court costs. For the reasons set forth below, Plaintiff's motion for attorneys' fees, ECF No. 266, is GRANTED, and Defendants' motion for attorneys' fees, ECF No. 263, is DENIED.

**FACTS AND PROCEDURAL HISTORY**

For purposes of the instant motions, the Court assumes the parties' familiarity with the underlying facts and repeats only those necessary for disposing of the instant motions.

Plaintiff worked as the exclusive sales representative for Defendants, and the relationship of the parties was governed by the Sales Representative Agreement ("SRA"), dated November 9,

1999.[1] The parties' relationship under the SRA continued for almost two decades. However, the relationship between the parties began to deteriorate, and on May 31, 2018, Defendants sent a letter to Plaintiff advising that the SRA would terminate on December 31, 2018. Plaintiff eventually responded by filing a demand for arbitration with the American Arbitration Association ("AAA") on July 18, 2018. Both Defendants attempted to secure a stay of the arbitration, with Bi-Qem SA de CV filing a petition to stay in New York state court and Bi-Qem, Inc. filing a similar petition in Massachusetts state court. Defendants were unsuccessful in securing a stay in either forum. While the arbitration proceedings were pending before the AAA, Defendants sent a letter withdrawing the notice of termination. Thereafter, the parties reached a resolution whereby the arbitration and stay actions were dismissed prior to the arbitration panel rendering a decision.

In the months that followed, the parties' relationship further deteriorated, and in March of 2019, Plaintiff commenced the instant action against Defendants and formally terminated the SRA. Over the course of the litigation leading up to trial, Plaintiff asserted twelve separate causes of action arising out of the SRA and its termination against the Defendants: (1) breach of contract, (2) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq.*, (3) violation of the Connecticut Franchise Act, Conn. Gen. Stat. § 42-133e, *et seq.*, (4) breach of the covenant of good faith and fair dealing, (5) interference with business expectancy, (6) violation of the Connecticut sales representatives commissions statute ("Commissions Statute"), Conn. Gen. Stat. § 42-481, *et seq.*, (7) violation of the Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws. ch. 93A, § 1, *et seq.*, ("Chapter 93A"), (8) vexatious litigation in

---

[1] Although Defendant Bi-Chem, Inc. argued that it was not bound by the SRA and did not adopt the SRA, and that, in any event, enforcement of the SRA against it is barred by the Statute of Frauds, the jury rejected each of these arguments in rendering a verdict in favor of Plaintiff on the Breach of Contract claim.

violation of Conn. Gen. Stat. § 52-568, (9) unjust enrichment, (10) breach of implied contract, (11) fraudulent misrepresentation, and (12) fraud in the inducement.

Over the course of the litigation, Plaintiff's claims were winnowed down—some dismissed by the Court and others withdrawn voluntarily by Plaintiff. By the time the case was submitted to the jury, only four claims remained: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) CUTPA, and (4) Chapter 93A. The jury returned a verdict in favor of Plaintiff on the first two claims, and in favor of Defendants on the latter two. Judgment accordingly entered in favor of Plaintiff on June 13, 2022.

Now pending before the court are Plaintiff's and Defendants' cross motions for attorneys' fees and court costs.

**DISCUSSION**

    **I.**    **Defendants' Motion for Attorneys' Fees and Court Costs**

As discussed above, Plaintiff initially brought a claim pursuant to the Connecticut Commissions Statute alleging unpaid or untimely payment of its sales commissions. At the summary judgment stage, Plaintiff asserted alternative dates on which a jury might decide the relationship between the parties ended—an event which triggers obligations under the Commissions Statute. Plaintiff's purported damages under the Statute depended, in large measure, on the date chosen. The Court determined that it could not, on summary judgment, decide the issue insofar as it presented a question of fact. At trial, the Court decided, as a matter of law, that the date the relationship ended was the date that Plaintiff sent its letter terminating the SRA to Defendants. Insofar as Defendants had made all commission payments required under the statute following that date, Plaintiff advised the Court that the Commissions Statute claim was "out of the case." *See* May 20, 2022 Trial Tr. at 380:15–381:6, ECF No. 283.

Defendants now seek attorneys' fees and court costs pursuant to the Commissions Statute asserting that they are the "prevailing parties" on Plaintiff's Commissions Statute claim. *See* Defs.' Mem. in Supp. at 2–3, ECF No. 263-2; Defs.' Reply at 2, ECF No. 292. In response, Plaintiff argues that it ultimately prevailed on other, related claims at trial, and that therefore Defendants cannot be the "prevailing parties" for purposes of the Commissions Statute claim. Pl.'s Mem. in Opp'n at 9–11, ECF No. 278. The Court agrees with Plaintiff.

"In diversity cases, attorneys' fees are considered substantive and are controlled by state law." *Retained Realty, Inc. v. Est. of Spitzer*, No. 3:06-CV-0493J, 2007 WL 2221431, at *1 (D. Conn. July 26, 2007) (quoting *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985)).[2] "Connecticut follows the common law 'American' rule in assessing the award of attorney's fees. Under the 'American' rule, 'attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception.'" *Cumulus Broadcasting v. Okesson*, No. 3:10cv314 (JCH), 2012 WL 3822019, at *1 (D. Conn. Sept. 4, 2012) (quoting *Ames v. Comm'r of Motor Vehicles*, 267 Conn. 524, 532 (2004)). Where a party claims a statutory exception to the American Rule, courts "require a clear expression of the legislature's intent to create" such an exception. *Comm'r of Env't Prot. v. Mellon*, 286 Conn. 687, 695 (2008).

The Court must therefore examine whether the Commissions Statute authorizes an award of attorneys' fees under the circumstances presented here. *See Mellon*, 286 Conn. at 695 (requiring a clear expression of the legislature's intent to award attorneys' fees to a particular entity where

---

[2] Because the Second Circuit has held that "in general, a litigant who is a prevailing party for purposes of attorney's fees is also the prevailing party for purposes of costs," *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 101–02 (2d Cir. 2006), and because the Court finds that Defendants are not the prevailing parties for purposes of attorneys' fees under the Commissions Statute, Defendants are not entitled to costs either.

4

"the legislature clearly has authorized the court to award attorney's fees but . . . is ambiguous as to whether a particular entity is entitled to such an award").

The Commissions Statute provides that "[t]he prevailing party in any action brought pursuant to subsection (b) of this section shall be entitled to reasonable attorney's fees and court costs." Conn. Gen. Stat. § 42-482(d). Defendants claim that, because Plaintiff's Commissions Statute claim was "dismissed" during trial,[3] they are the "prevailing parties" on that claim and are therefore entitled to attorneys' fees and court costs under the Statute. Defs.' Reply at 2. However, Defendants' argument proceeds on the assumption that prevailing party status under the Commissions Statute is determined on a claim-by-claim basis, such that a party need only "prevail" on the Commissions Statute claim alone in order to be entitled to fees and costs. The Court is not persuaded.

"When construing a statute, [the Court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. In other words, [the Court] seek[s] to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of the case, including the question of whether the language actually does apply." *Athena Holdings, LLC v. Marcus*, 160 Conn. App. 470, 475 (2015) (quoting *Cruz v. Montanez*, 294 Conn. 357, 367 (2009)) (cleaned up). In determining a statute's meaning, a court should look first to the words of the statute itself and to its relationship to other statutes. *Id.* If the language is ambiguous, the Court may turn to extratextual evidence such as "the legislative history and circumstances surrounding [the statute's] enactment," "the legislative policy it was designed to implement," and "its

---

[3] Plaintiff states that the Commissions Statute claim was "withdrawn" from the action in response to the Court's ruling regarding the date on which the parties' business relationship ended, rather than dismissed. *See* Pl.'s Mem. in Opp'n at 9. As the Court never assessed the merits of the Commissions Statute claim and merely accepted Plaintiff's assessment that the Court's ruling effectively negated its claim for damages under the Commissions Statute, and because Defendants never requested nor were granted a dismissal of the claim, the Court agrees with Plaintiff's characterization that the claim was withdrawn, rather than dismissed. This is not a basis on which the Court denies Defendants' motion, however.

5

relationship to existing legislation and common law principles governing the same general subject matter." *Russell v. Russell*, 91 Conn. App. 619, 629 (2005) (quoting *Lombardo's Ravioli Kitchen, Inc. v. Ryan*, 268 Conn. 222, 230–31 (2004)).

The plain language of the Commissions Statute requires that a party be the "prevailing party" in an "action" in order to recover fees and court costs. Although the term "action" is not defined in the statute, Black's Law Dictionary defines "action" as "[a] civil or criminal judicial proceeding."[4] *See State v. Fernando A.*, 294 Conn. 1, 17 (2009) ("If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary."). "Every word and phrase of a statute is presumed to have meaning," *Tomick v. United Parcel Serv., Inc.*, 324 Conn. 470, 483 (2016) (cleaned up), and the Commissions Statute's inclusion of the word "action" suggests that, in order to obtain fees and costs under the Statute, a party must prevail in the litigation as a whole, rather than only on the Commissions Statute claim. If the legislature intended the Commissions Statute to operate on a claim-by-claim or defense-by-defense basis, it could have substituted "action" for "claim" or simply omitted any reference to an "action," but it did not do so, and the Court must give effect to the statute's plain language. *See id.* ("[A] statute must be construed, if possible, such that no clause, sentence or word is superfluous, void or insignificant." (cleaned up)).

---

[4] Black's Law Dictionary further observes that "[a]n action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. . . . More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree. The action is said to terminate at judgment." ACTION, Black's Law Dictionary (11th ed. 2019) (quoting 1 Morris M. Estee, *Estee's Pleadings, Practice, and Forms* § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885). "The terms 'action' and 'suit' are nearly if not quite synonymous." *Id.* (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 3 (2d ed. 1899)); *see also Brownback v. King*, 141 S. Ct. 740, 751 (2021) (Sotomayor, J., concurring) ("An 'action' refers to the whole of the lawsuit. Individual demands for relief within a lawsuit, by contrast, are 'claims.'" (internal citations omitted)).

This conclusion is consistent with and bolstered by Connecticut caselaw, under which "prevailing party" is routinely defined by reference to a party's success in the litigation as a whole, with the most commonly accepted definition being "[a] party *in whose favor a judgment is rendered*, regardless of the amount of damages awarded." *Russell*, 91 Conn. App at 630–31 (emphasis added) (quoting *Frillici v. Westport*, 264 Conn. 266, 285 (2003); *Wallerstein v. Stew Leonard's Dairy*, 258 Conn. 299, 303 (2001); *Right v. Breen*, 88 Conn. App. 583, 591 (2005)). When confronted with cases involving partially prevailing plaintiffs, Connecticut courts have often stated that "if [a] party 'obtains judgment on *even a fraction of the claims advanced*, or is awarded only nominal damages, the party may nevertheless be regarded as the 'prevailing party.'" *Simms v. Chaisson*, 277 Conn. 319, 325 (2006) (emphasis added) (quoting *Russell*, 91 Conn. App. at 631). Indeed, the Supreme Court of Connecticut, in a case decided only four years before the Commissions Statute was enacted, stated, "it is difficult to see why one who has secured a judgment of the court in his favor should not be viewed as a party who has *prevailed in the action in question*, irrespective of the route by which he received that judgment." *Wallerstein*, 258 Conn. at 303 (emphasis added); *see also Fernando A.*, 294 Conn. at 19 ("[T]he legislature is presumed to be cognizant of judicial decisions relevant to the subject matter of a statute and to know the state of existing relevant law when it enacts a statute." (quotations omitted and cleaned up)).

Thus, although the Court has been unable to locate any cases directly addressing the issue presented here, the most logical reading of the Commissions Statute, and the one that is most consistent with Connecticut law generally, is that, in order to be entitled to fees and costs, a party must be the prevailing party in the action as a whole, rather than merely prevailing only on the Commissions Statute claim. Defendants cite no authority, and the Court has been unable to locate

any authority supporting a reading to the contrary.[5] Here, the jury returned a verdict in favor of Plaintiff on two of Plaintiff's claims and judgment accordingly entered in favor of Plaintiff. *See Wallerstein*, 258 Conn. at 303–04. Under Connecticut law, Defendants are therefore not the "prevailing party" in this "action" and are not entitled to an award of attorneys' fees and costs under the Commissions statute.

Accordingly, Defendants' motion for attorneys' fees and court costs, ECF No. 263, is DENIED.[6]

## II. Plaintiff's Motion for Attorneys' Fees and Court Costs

The Court next turns to Plaintiff's motion for attorneys' fees and court costs, ECF No. 266. Plaintiff argues that it is entitled to attorneys' fees and court costs pursuant to section 7(b) of the SRA and seeks costs and fees for all of the stages of its litigation with Defendants, including the arbitration and state court actions that took place prior to instituting the present dispute.

---

[5] Both parties cite exclusively to federal court cases in their memoranda regarding the instant motion. However, as noted above, because this is a diversity case, Connecticut law, rather than federal law, controls the determination of who is a "prevailing party." *See Grand Union Co.*, 761 F.2d at 147.
Moreover, Defendants' reliance on *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983)) is misplaced. Defendants argue that "in determining the identity of a prevailing party in a case asserting several claims, the determinative factor is whether the claims 'are based upon different facts and legal theories.'" Defs.' Reply at 3 (quoting *Hensley*, 461 U.S. at 434–35). However, the Court in *Hensley* was not concerned with "determining the identity of a prevailing party," as Defendants represent, but with "determin[ing] what fee is 'reasonable'" in the situation in which "a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." 461 U.S. at 433–34. These are distinct issues. And because every case cited by Defendants, with the exception of *Soley v. Wasserman*, No. 08-CV-9262 KMW FM, 2014 WL 4798901 (S.D.N.Y. Sept. 25, 2014), presupposes the identity of the prevailing party (the plaintiff), they shed little light on the issue before this Court, *see, e.g.*, *Cabrera v. Astrue*, No. 06 CIV. 9918 (JCF), 2008 WL 4410094, at *1 (S.D.N.Y. Sept. 29, 2008) ("It is undisputed that the plaintiff met all three of these requirements [including the requirement that the plaintiff be the prevailing party] and is entitled to receive attorneys' fees."); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) ("The court's normal starting point for calculating reasonable attorneys' fees to be awarded to a prevailing civil rights plaintiff is the calculation of a so-called 'lodestar' figure . . . ."). Nor is *Soley* helpful to Defendants. First, *Soley* involved an assessment of costs only, not a statutory entitlement to attorneys' fees. *See* 2014 WL 4798901, at *3. Further, the competing mechanisms identified in *Soley* for determining a "prevailing party" for purposes of assessing costs derive from a compendium of cases which apply different laws to the issue than those applied by Connecticut courts.

[6] Although the Court concludes that Plaintiff's failure to obtain a judgment on the Commissions Statute claim, specifically, does not entitled Defendants to attorneys' fees and court costs under the Statute, Plaintiff's kitchen-sink approach to the litigation and failure to sustain the majority of the claims originally advanced may be relevant in determining what attorneys' fee award under the SRA for Plaintiff is "reasonable." *See Conservation Comm'n of Town of Fairfield v. Red 11, LLC*, 135 Conn. App. 765, 786 (2012) (noting that one factor to be considered in adjusting an attorneys' fee award is "the amount involved and the results obtained" in the litigation).

i.    Whether Section 7(b) of the SRA Applies to First-Party Actions

As discussed above, under Connecticut law, an exception to the "American" rule regarding an award of attorneys' fees is the existence of a statutory or contractual provision allowing for such an award. *Total Recycling Servs. of Ct. v. Conn. Oil Recycling Servs, LLC*, 308 Conn. 312, 326–27 (2013). The Court therefore first examines whether the SRA authorizes such an award.

Plaintiff argues that it is entitled to attorneys' fees and court costs pursuant to section 7(b) of the SRA. *See* Pl.'s Mem. in Supp. at 3, ECF No. 267. Defendants argue that section 7(b), which is entitled "Indemnification Against Breach of Agreement," is an indemnification provision intended to apply only to third-party disputes, and therefore that it unambiguously does not apply to the instant action which arises between the contracting parties ("first-party actions"). *See* Defs.' Mem. in Opp'n at 2–3, ECF No. 280. Alternatively, Defendants posit that the provision is at least ambiguous as to whether it applies to first-party actions, and therefore that the interpretation of the provision should have been submitted to the jury. *Id.* at 3–4. Because Plaintiff never sought to submit the question to the jury, Defendants argue that Plaintiff has waived any claim to attorneys' fees under the provision. *Id.* Plaintiff counters that the section unambiguously does provide for attorneys' fees in first-party actions, and moreover that the Court already held as much in an oral ruling made during trial. *See* Pl.'s Reply at 4, 6–8, ECF No. 295.

As an initial matter, the Court considers Plaintiff's argument that the Court has already ruled that the SRA unambiguously provides for attorneys' fees in first-party actions. By way of background: at the summary judgment stage of the proceedings, Defendants argued that section 11(c) of the SRA restricted Plaintiff's post-termination remedies such that Plaintiff could only seek commissions on orders placed prior to the SRA's termination.[7] *See* Defs.' Mot. Summ. J. at 10–

---

[7] Section 11(c) of the SRA provides:

9

18, ECF No. 165-24. In opposition, Plaintiff argued, *inter alia*, that such a reading of section 11(c) is incongruous with section 7(b), which Plaintiff alleged "specifically addresses the situation where one party has breached the Agreement and requires that party to make the other party whole for any resulting harm." Pl.'s Summ. J. Opp'n at 9, ECF No. 181. Plaintiff further argued that section 7(b) "expressly provides that the party breaching its obligations shall indemnify the other party for all damages and expenses *including reasonable attorneys' fees*," and noted, specifically, that the provision was "not limited to reimbursement for a claim brought by a third party." *Id.* at 10–11 (emphasis in original). Defendants did not respond to Plaintiff's arguments regarding section 7(b) in their summary judgment briefing, and the Court did not reach these arguments in denying Defendants' motion. *See generally* Order Denying Mot. Summ. J., ECF No. 195.

At trial, the Court was confronted with the issue of whether section 11(c) was ambiguous and should therefore be submitted to the jury to determine whether it limited Plaintiff's available remedies and damages, or whether it was unambiguous as a matter of law. *See* May 18, 2022 Trial Tr. at 5:17–9:18, ECF No. 281. The Court indicated that, in determining whether the provision was ambiguous, it would refer back to the summary judgment briefing. *Id.* at 6:10–14; 8:19–24. The Court also briefly heard argument on the issue, during which Plaintiff once again argued that section 7(b) allows for the nonbreaching party to seek "various types of relief, including monetary damages, as well as attorneys' fees and costs." *Id.* at 8:6–11. Once again, Defendants did not respond to Plaintiff's arguments regarding section 7(b).

---

<u>*Rights and Obligations of Parties Following Termination.*</u> Upon termination of this Agreement, neither Representative nor Supplier shall have any rights and obligations with respect to each other except as otherwise specifically provided herein. Termination of this Agreement shall not affect the rights and obligations of Representative with respect to orders for Products procured by Representative and accepted by Supplier prior to the effective date of termination.

Two days later, the Court ruled that section 11(c) unambiguously did not limit Plaintiff's remedies, stating:

> The Defendants have asserted that Section 11(c) serves as a limitation on Plaintiff's claims and damages in this litigation. I disagree. The section unambiguously does no such thing. It does not preclude the Plaintiff from seeking damages for a claimed breach of the contract, and indeed, his right to do [so] is clearly set forth in Section 7(b).
>
> So the jury will not be asked to interpret Section 11(c) and will not be charged with respect to this argument.

May 20, 2022 Trial Tr. at 370:6–13.

Plaintiff alleges that the Court's statement above constituted a ruling that Section 7(b) unambiguously applies to first-party actions. *See* Pl.'s Mem. in Supp. at 4 n.2; Pl.'s Reply at 4. Although the issue was not squarely before the Court, Plaintiff did clearly advance, on numerous occasions, the argument that section 7(b) applied to first-party actions and allowed for the recovery of attorneys' fees in this case. And Defendants never countered those arguments. It is further clear that the Court found this argument compelling in ruling that section 11(c) did not restrict Plaintiff's remedies. Given this history, Plaintiff's argument that the issue has already been decided is persuasive.

Notwithstanding the above, because the applicability of section 7(b) to first-party actions was not, at least arguably, squarely before the Court prior to the instant motion, the Court examines the issue at this juncture with the benefit of the briefing from both sides. Having now done so, the Court concludes that section 7(b) unambiguously provides for an award of attorneys' fees under the circumstances presented here.

Defendants rely on the Second Circuit's opinion in *Rand-Whitney Containerboard Ltd. P'ship v. Town of Montville*, 290 F. App'x 430 (2d Cir. 2008), for the proposition that section 7(b) is an indemnification provision that is applicable only to third-party claims. *See* Defs.' Mem. in

11

Opp'n at 1–2. In *Rand-Whitney*, the court held in a summary order that the contractual indemnification provision at issue there unambiguously did not apply to first-party actions. 290 F. App'x at 433. Relying on the Connecticut Supreme Court's opinion in *Amoco Oil Co. v. Liberty Auto & Elec. Co.*, 262 Conn. 142, 144 (2002), the *Rand-Whitney* court stated that "under Connecticut law, the words 'indemnification and hold . . . harmless'—which are used in this contract—are typically interpreted to apply to third-party claims." *Rand-Whitney*, 290 F. App'x at 433 (emphasis added). However, the *Rand-Whitney* decision "merely states that under Connecticut law, phrases such as 'indemnification' and 'hold harmless' are '*typically* interpreted to apply to third-party claims.'" *Helming & Co., P.C. v. RTR Techs., Inc.*, 76 F. Supp. 3d 363, 370 (D. Mass. 2015) (quoting *Rand-Whitney*, 290 F. App'x at 433).

In *Amoco Oil*, the Connecticut Supreme Court stated that "[t]he logic and rationale underlying our indemnity case law are based on the premise that *an action for indemnification* is one in which one party seeks reimbursement from another party for losses incurred in connection with the first party's liability to a third party." 262 Conn. at 148 (emphasis added). However, *Amoco Oil* is factually inapposite to the circumstances at issue here,[8] and, as subsequently

---

[8] As aptly summarized by the District of Massachusetts in *Helming*:

> In *Amoco*, the plaintiff hired the defendant to construct underground gasoline tanks. More than six years later, the plaintiff discovered that one of the tanks was leaking and brought suit. The six-year statute of limitations had run on any claim for breach of contract, so plaintiff anchored its claim on the indemnification provisions of the parties' contract. The Connecticut Supreme Court concluded that plaintiff's claim for losses was "not a claim for indemnification at all, but, rather, a claim for damages for its own losses arising out of [the defendant's] allegedly negligent and improper installation of the tanks." In other words, plaintiff's lawsuit was, in fact, a claim for breach of contract dressed up as an indemnification action to avoid the statute of limitations problem.

76 F. Supp. 3d at 369–70. Thus, at issue in *Amoco Oil* was the proper characterization of the plaintiff's lawsuit as either an indemnification action or breach of contract action. *See Heyman Assocs. No. 5, L.P. v. FelCor TRS Guarantor, L.P.*, 153 Conn. App. 387, 412 (2014). Conversely, Plaintiff here is not attempting to initiate an *action for indemnification* against Defendants, but rather is claiming that section 7(b) of the SRA, although labeled as an indemnity provision, is broad enough that it also encapsulates claims for attorneys' fees in the instant, properly initiated breach of contract action.

discussed by the Appellate Court of Connecticut, did not address "whether contractual language . . . that utilizes the phrase 'indemnify and hold . . . harmless,' is limited to *an action for indemnification*, or whether that language may support a claim between the contracting parties." *Heyman*, 153 Conn. App. at 414 (emphasis in original). Confronting that question head-on, the Appellate Court found that such language is not "talismanic" nor does it "automatically dictate[] that the provision allows only an action for indemnification limited to the coverage of only third party claims." *Id.* at 415. Rather, the *Heyman* court held that the determination of whether a contractual provision containing terms such as "indemnify" and "hold harmless" applied to first-party actions depended on well-established principles of contract interpretation. *Id.*

Thus, "[i]n reviewing a claim that attorney's fees are authorized by contract, [a Court must] apply the well established principle that [a] contract must be construed to effectuate the intent of the parties, which is determined from [its] language . . . interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Id.* (quoting *Total Recycling*, 308 Conn. at 327). "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the [writing]." *Id.* (quoting *Conn. Nat'l Bank v. Rehab Associates*, 300 Conn. 314, 319 (2011)). Applying these principles to the provision at issue in that case, the *Heyman* court found that the provision unambiguously applied to first-party actions.[9] *Id.* at 415–17. The court reasoned that the

---

[9] The provision at issue in *Heyman* provided, in relevant part:

> [Holiday Inn] agrees to and does hereby indemnify and hold [BRS] harmless hereunder from all claims, demands, losses, damage, expenses and costs including, but not limited to, reasonable attorney's fees and expenses arising out of or in connection with [Holiday Inn's] failure, from and after delivery of this instrument, to observe, perform and discharge on time each and every one of the covenants, obligations and liabilities assumed by [Holiday Inn] in this instrument relating to, or accruing with respect to the period from and after, not before the date hereof.

13

language of the provision was broad and "not expressly limited to third party claims," and that interpreting the provision in a way that restricted it to third-party claims "would render portions of the indemnification provision superfluous." *Id.* at 415–16.

Likewise, section 7(b) of the SRA unambiguously applies to claims for attorneys' fees in the instant action. Beginning with the plain language of the provision, section 7(b) provides:

> <u>*Indemnification Against Breach of Agreement.*</u> Any party breaching its obligations under this Agreement (a "Defaulting Party") shall indemnify and hold the other party harmless against all claims, losses, damages, costs, and expenses (including reasonable attorneys' fees) of any nature or kind arising directly or indirectly from such breach.

Just as in *Heyman*, section 7(b) is broadly worded, encompassing "all claims . . . of *any nature or kind*." *Cf. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 178–79 (2d Cir. 2005) (finding, under New York law, that "the broad language of the second provision . . . indicates 'unmistakably' that the parties intended for the second provision to apply to 'actions of any kind or nature,' including actions between the parties"). Section 7(b) is also not expressly limited to third-party claims—in fact, it speaks specifically of claims arising from any party's "breach" of the SRA, a term generally employed in the context of first-party contract disputes. Indeed, it is difficult to think of a party more likely to assert a claim arising from the breach of the contract than a party to the contract itself. And, given that no other provision in the SRA addresses a first-party's rights or remedies in the event of the other party's breach, it is manifest that the parties intended for section 7(b) to be the operative provision in such circumstances.

Further supporting this conclusion is the fact that section 7(a), which immediately precedes section 7(b), refers specifically to third-party actions. Section 7(a), entitled "Indemnification

---

153 Conn. App. at 410.

Against Liability for Trademarks and Products," reads as a third-party indemnification provision. For example, it provides: "[Defendants] shall defend any such claims against [Plaintiff]" and "[Defendants] . . . shall pay any judgment that may be rendered against [Plaintiff] for any such claims." Taken together, the only reading of section 7 as a whole is that section 7(a) was intended to apply to third-party disputes while section 7(b) was not intended to be so restricted.

Thus, "[g]iven the broad language of [section 7(b)] and the absence of any indication that it was limited to third party claims," *Heyman*, 153 Conn. App. at 417, the Court concludes that section 7(b) unambiguously applies to first-party actions and provides for an award of attorneys' fees and costs to Plaintiff in this case for Defendants' breach of the SRA.[10]

### ii. Amount of Reasonable Fees and Costs

Because the Court finds that section 7(b) unambiguously provides for Plaintiff's recovery of attorneys' fees in the event of Defendants' breach, and because the jury found that Defendants breached the SRA, no issues of fact remain regarding Plaintiff's claim to attorneys' fees, and the Court can properly determine the amount of fees to be awarded. *See New Shows, S.A. de C.V. v. Don King Prods., Inc.*, No. 95 CIV. 8851 (RPP), 1999 WL 553780, at *11 (S.D.N.Y. July 29, 1999), *aff'd*, 210 F.3d 355 (2d Cir. 2000) (citing *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993)). Plaintiff seeks all of its fees and costs incurred not only in this action, but also in the prior litigation against Defendants to include the AAA arbitration and state-court proceedings that took place before this case was filed. *See* Pl.'s Mem. in Supp. at 7–14. Defendants did not address the amount of fees and expenses requested by Plaintiff, but indicated that they

---

[10] In an accompanying declaration of Defendants' counsel, Attorney Cinque argues that, even if section 7(b) applied to first-party actions, Plaintiff is not entitled to attorneys' fees under the provision because Plaintiff is not the "prevailing party." *See* Cinque Decl. at ¶ 8, ECF No. 279. This argument incorrectly presupposes that section 7(b) requires that Plaintiff must be a "prevailing party." However, section 7(b) includes no such language. And in any event, under Connecticut law, as discussed above, Plaintiff is the prevailing party in this litigation.

15

"reserve the right to do so in the event that the Court rules that [Plaintiff] is entitled to fees." Defs.' Mem. in Opp'n at 4. Having so ruled, the Court will allow supplemental briefing to address the amount of fees and expenses that Plaintiff shall receive. The Court does, however, render some preliminary rulings as to the scope of the fees that may be properly awarded.

Specifically, the Court concludes that Plaintiff may not seek the costs and fees arising from the AAA arbitration and state-court proceedings which occurred prior to the bringing of the instant action. On this issue, Plaintiff contends that the Court "preserved Plaintiff's right to recover attorneys' fees and costs in connection with the arbitration proceeding commenced by [Plaintiff]" in ruling on Defendants' motion for summary judgment. Pls.' Mem. in Supp. at 7. However, Plaintiff takes the Court's decision on the motion for summary judgment entirely out of context. The Court held that Plaintiff may have a right to seek the arbitration fees and related litigation costs as part of its *damages* arising out of Defendants' breach of contract in the instant litigation, but that Plaintiff would "bear the burden of establishing the causal nexus between any such damages and the cause of action(s) asserted." Order Denying Mot. Summ. J. at 15. And it goes without saying that the question of whether Plaintiff has met this burden is for the jury to decide. *See Barry v. Posi-Seal Int'l, Inc.*, 40 Conn. App. 577, 581 (1996) ("Assessment of damages is peculiarly within the province of the jury . . . ." (quotation omitted)). When Plaintiff reiterated its intention to seek such damages at trial, Defendants objected on the ground that they had never received any discovery in support of this damages claim. In light of Plaintiff's failure in this regard, Plaintiff withdrew any claim for those damages and the jury was not asked to decide whether those fees and costs were incurred *as a result of* Defendants' breach of the SRA. Simply because the Court has construed section 7(b) to allow an award of attorneys' fees in connection with this

16

litigation does not render what should have been pursued as damages within the scope of the available award. The SRA does not eliminate the Plaintiff's burden of proving damages.

Accordingly, while Plaintiff may recover attorneys' fees and court costs arising out of the instant action for breach of contract against Defendants, Plaintiff may not recover fees incurred in connection with the AAA arbitration or state-court proceedings. If Defendants wish to contest the amount of the fees sought, they may file supplemental briefing on or before **April 17, 2023**. Plaintiff may respond to any supplemental submission by **May 1, 2023**.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for attorneys' fees and court costs, ECF No. 263, is DENIED. Plaintiff's motion for attorneys' fees and court costs, ECF No. 266, is accordingly GRANTED to the extent that the Court finds that Plaintiff is entitled to recover reasonable attorneys' fees and court costs pursuant to section 7(b) of the SRA.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of March 2023.

                                              */s/ Kari A. Dooley*
                                              KARI A. DOOLEY
                                              UNITED STATES DISTRICT JUDGE