UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRADE LINKS, LLC,<br>    *Plaintiff*, | ) CASE NO. 3:19-CV-00308 (KAD)<br>)<br>) |
| v. | )<br>) |
| BI-QEM SA de CV, ET AL.,<br>    *Defendant(s)*. | ) JANUARY 18, 2024<br>) |

**MEMORANDUM OF DECISION**
**RE: MOTION FOR ATTORNEYS' FEES (ECF NO. 266)**

Kari A. Dooley, United States District Judge:

Pending before the Court is Plaintiff Trade Links, LLC's motion for attorneys' fees and costs in the amount of $1,750,054.79 incurred in connection with this litigation which resulted in a jury trial against the Defendants, Bi-Qem SA de CV and Bi-Qem, Inc. (together, "Defendants"). For the reasons that follow, Plaintiff is awarded $712,303.27 in attorneys' fees and $63,541.02 in costs.

**Facts and Procedural History**

For purposes of the instant motion, the Court assumes the parties' familiarity with the underlying facts and repeats only those necessary for disposing of the instant motions.

In March of 2019, Plaintiff commenced the instant action against Defendants. Over the course of the litigation leading up to trial, Plaintiff asserted or attempted to assert twelve separate causes of action arising out of the breakdown in the parties' business relationship: (1) breach of contract, (2) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq.*, (3) violation of the Connecticut Franchise Act, Conn. Gen. Stat. § 42-133e, *et seq.*, (4) breach of the covenant of good faith and fair dealing, (5) interference with business expectancy, (6) violation of the Connecticut sales representatives commissions statute

1

("Commissions Statute"), Conn. Gen. Stat. § 42-481, *et seq.*, (7) violation of the Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws. ch. 93A, § 1, *et seq.*, ("Chapter 93A"), (8) vexatious litigation in violation of Conn. Gen. Stat. § 52-568, (9) unjust enrichment, (10) breach of implied contract, (11) fraudulent misrepresentation, and (12) fraud in the inducement.

Some of these claims were disallowed. Some were dismissed by the Court and others withdrawn voluntarily by Plaintiff. By the time the case was submitted to the jury, only four claims remained: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) CUTPA, and (4) Chapter 93A. The jury returned a verdict in favor of Plaintiff on the first two claims, and in favor of Defendants on the latter two. Judgment accordingly entered in favor of Plaintiff on June 13, 2022.

After the trial, both parties moved for attorneys' fees and costs. The Court denied Defendants' request and simultaneously ruled that Plaintiff was entitled to recover fees under the parties' governing contract, the Sales Representative Agreement ("SRA"). *See* ECF No. 309. Because Defendants' objection to Plaintiff's request for attorneys' fees did not address the amount to be awarded to be Plaintiff, Defendants sought and were permitted to file supplemental briefing rebutting Plaintiff's request as to the propriety of the amount sought. Plaintiff subsequently filed a lengthy submission in response to Defendants' supplemental objection, of which the Court considers only the memorandum of law and not the attached affidavits and exhibits. *See* ECF No. 334 at 6.

**Standard of Review**

"In diversity cases, attorney's fees are considered substantive and are controlled by state law." *U.S. v. One Parcel of Property Located at 414 Kings Highway*, No. 5:91–CV–158 (EBB), 1999 WL 301704, at *4 (D.Conn. May 11, 1999) (citations omitted). "Where a contract provides

for the payment of attorney's fees ... those fees are recoverable solely as a contract right. ... Therefore, the language of the [contract] governs the award of fees."[1] *Watson Real Est., LLC v. Woodland Ridge, LLC*, 208 Conn. App. 115, 125, 264 A.3d 96, 102–03, *cert. denied*, 340 Conn. 911, 264 A.3d 577 (2021). Recovery is therefore permissible so long as the request for fees "is not unreasonable upon its face and has not been shown to be unreasonable by countervailing evidence or by the exercise of the court's own expert judgment." *Id.*

Several factors govern a court's determination of an appropriate award of attorneys' fees. These factors, summarized in Rule 1.5(a) of the Connecticut Rules of Professional Conduct, include: "the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client; the experience, reputation and ability of the lawyer or lawyers performing the services, and whether the fee is fixed or contingent." *WiFiLand, LLP v. Hudson*, 153 Conn. App. 87, 103, 100 A.3d 450, 459 (2014). Additionally, courts "may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." *Total Recycling Servs. of Ct., Inc. v. Connecticut Oil Recycling Servs., LLC*, 308 Conn. 312, 327, 63 A.3d 896, 905 (2013) (internal citations and quotations omitted).

"[A] party may recover attorney's fees for unsuccessful claims, but those claims must be inextricably intertwined and involve a common basis in fact or legal theory with the successful claims." *Francini v. Riggione*, 193 Conn. App. 321, 336, 219 A.3d 452, 462 (2019). A further "key consideration in evaluating a claim for litigation expenses is the overall extent of the success achieved. Where a party succeeds on one claim, but fails on other claims brought in the same suit,

---

[1] The Court has already determined that the Plaintiff is entitled to an award of attorneys' fees under the language of the applicable contract – the Sales Representative Agreement ("SRA"). *See* ECF No. 309.

the size of his attorneys fee award should reflect his success, as determined by the trial court in securing redress for the injuries that prompted his successful claim and reasonable legal cost incurred in pursuing this success." *Rice v. Ryders Health Mgmt., Inc.*, No. KNL136016915S, 2016 WL 3769093, at *4 (Conn. Super. Ct. June 16, 2016) (internal citations and quotations omitted).

**Discussion**

Plaintiff buckets its fees request into the following categories: the parties' prior arbitration and state court proceedings (totaling $325,448.26) [2]; commencement of the underlying civil action and its initial discovery and motion practice (totaling $435,975.83); "heavy" discovery, international depositions by remote protocol, and summary judgment (totaling $510,488.67); initial motions in limine following the Court's ruling on summary judgment (totaling $59,398.80); and preparation of the joint trial memorandum, jury selection, and trial (totaling $418,743.23). *See* Pl.'s Mem. in Supp., ECF No. 267. In total, Plaintiff seeks a fee award of $1,750,054.79.

Defendants maintain that Plaintiff's submission is deficient because it lacks affidavits from some of Plaintiff's attorneys and because Plaintiff did not submit contemporaneous time records of its attorneys. Defs. Mem. in Opp'n at 1, ECF No. 313. Defendants additionally argue that Plaintiff seeks fees for "excessive and duplicative time," including time spent "conferencing and strategizing"; that its submission is riddled with vague descriptions and compensation for time spent on matters not within the purview of the underlying civil action; and that Plaintiff has block billed and seeks fees for work that established a right to indemnification. *Id.* at 3-6. Defendants further claim that Plaintiff is not entitled to recover fees for any claims other than breach of contract

---

[2] The Court has already ruled that the Plaintiff is not entitled to attorneys' fees incurred as a result of the prior arbitration or state court litigation involving the same parties. *See* ECF No. 309. While the Court agreed that such fees could be sought as damages at trial, the Defendants objected insofar as no discovery with respect to any such damages had been provided. The Plaintiff then made the decision not to seek the arbitration and state court litigation attorneys' fees from the jury.

4

under the language of the SRA. *Id.* at 7, 12. Finally, Defendants urge the Court to apply an overall "downward modification" of at least 75% of the requested fees, pointing to Plaintiff's "very limited success" in pressing most of its original claims. *Id.* at 13, 17.

Having considered the parties' arguments, the Court has determined that Plaintiff is not entitled to the full amount of fees sought and is instead entitled to $712,303.27.

First, the Court subtracts from the starting point of the analysis the $325,448.26 sought in connection with the prior arbitration and state court litigation, which results in a total possible award of $1,424,606.53. Next, in determining the amount of the award, the Court does not question counsel's hourly rates and finds them to be reasonable. However, considering the various factors outlined above, there are significant reasons to further reduce the award sought by Plaintiff.

This litigation has been marred by excessive and unreasonable litigation strategies by all parties, plaintiff included. *See, e.g.,* ECF No. 112, Order ("Although the parties in this litigation have evinced a reluctance to agree on anything, have chosen a wasteful and contentious litigation strategy, and their experienced counsel do not appear inclined to suggest a different path, nothing in this Order precludes the parties from agreeing to an alternative arrangement for taking Mr. Coppari's deposition.") Plaintiff commenced this action with the filing of an eight count Complaint, which contained claims that were not, and could not be, plausibly alleged based upon the facts contained therein. After much time and briefing, the Court dismissed with prejudice count three, purportedly brought under the Connecticut Franchise Act and count eight, a statutory vexatious litigation claim. Particularly unfounded, and arguably frivolous, was Plaintiff's effort to bring the allegations within the parameters of the Connecticut Franchise Act. Plaintiff also sought to amend the complaint to add four new causes of action. Again, after significant briefing, the Court denied the request to add two fraud-based claims because they were inadequately pled. The

Court permitted two additional contract-based claims – unjust enrichment and breach of implied contract – but only as against one defendant. *See* ECF No. 121.

In addition, through summary judgment briefing, Plaintiff was unable to articulate its factual theory behind the count alleging tortious interference with business expectancies. When the Defendants sought summary judgment on the ground that Plaintiff, as Defendants' agent, did not have any separate business or contractual relationships with Defendants' customers, Plaintiff argued that this was not the basis for his claim. Although Defendants' argument was based upon a fair reading of Plaintiff's complaint, the Court denied summary judgment as the parties were simply briefing past each other (a common occurrence). But the Court also warned the Plaintiff that it would be required to better articulate the basis for this claim at trial. Rather than do so, Plaintiff withdrew the claim at the time of trial. Whatever time and resources derive from the inclusion of this discarded claim must be accounted for in the fee award.

Eventually, of the many claims originally brought, only four went to trial, and the jury returned a Plaintiff's verdict as to only two of the four – breach of contract and breach of the covenant of good faith and fair dealing. The jury rejected the CUTPA and Chapter 93A claims. The jury's verdict confirmed what the years of litigation had long revealed – this was a straightforward breach of contract claim arising out of a bitter breakdown of a longstanding personal and professional relationship between the parties and their principals. It should have been litigated as such.[3] Instead, the litigation was thoroughly infected with the personal animus that

---

[3] The Defendants' conduct throughout the litigation was also troubling and the record is replete with circumstances under which the Court questioned the propriety, if not the ethics, of the Defendants' litigation strategy. *See, e.g.,* ECF No. 145 ("This litigation has been marred by questionable litigation strategies and this motion appears to be, unfortunately, more of the same. Indeed, this motion to dismiss raises the question of whether the Defendants' counsel has adequately considered his obligations under Rule 11(b).") And to the extent such conduct contributed to Plaintiff's attorneys' fees, those fees are awarded. The Court's concerns with the Defendants however are not detailed herein because this decision is about how much to award the Plaintiff. And so it is the Plaintiff's request that comes under the Court's scrutiny.

existed between the parties' principals. *See, e.g.*, ECF No. 313 at 7-9 (describing and including the competing narratives as to who the real "bully" was in this litigation, Plaintiff's principal Mr. Esagoff or Defendants' principal Mr. Colombo.)

The Court further observes that Plaintiff posited a damages award that, depending on the jury's determination as to how far into the future the SRA would have been kept in place, could have been in excess of $10 million. *See* ECF No. 256 and 291 at 90-92. The jury awarded less than $1 million dollars, rejecting Plaintiff's claim that the SRA could and would persist in perpetuity, at the Plaintiff's bidding.

Finally, it would be impossible to parse through the invoices and time records submitted to determine which entries relate specifically to the breach of contract claims on which Plaintiff prevailed. And the Court agrees with Plaintiff that to some extent, the factual support for the breach of contract claims overlapped with the other claims. The Court also resoundingly rejects Defendants' invitation to review defense counsel's hand-written notes on a marked up version of the invoices as a means of eliminating billed time. Under all of the circumstances of this case, the Court concludes that a straight percentage reduction in the amount sought is appropriate. *See, e.g., Carter v. Wolf*, No. 3:06-CV-1351 (HBF), 2013 WL 1946827, at *4 (D. Conn. May 9, 2013) (reducing amount of attorneys' fees sought by 35% due to plaintiff's limited success on claims and vagueness of entries in fee application); *Friedman v. SThree PLC.*, No. 3:14-CV-00378 (AWT), 2017 WL 4082678, at *12 (D. Conn. Sept. 15, 2017), *objections overruled*, No. 3:14-CV-378 (AWT), 2019 WL 13171423 (D. Conn. Oct. 9, 2019) (applying 40% reduction of fee award for "excessive, duplicative and vague billing"); *Houston v. Cotter*, 234 F. Supp. 3d 392, 410 (E.D.N.Y. 2017) (applying 50 percent reduction to hours requested in fee application). The Court's award is a reflection of, *inter alia,* the 1) limited success at trial in terms of claims proven; 2) the limited

success at trial in terms of the damages awarded; 3) the overbroad nature of the claims pursued; 4) the abandonment at trial of one claim which had been fully litigated through summary judgment, and 5) the unnecessary briefing of tenuous legal positions. Accordingly, the Court reduces the amount of the award sought, $1,424,606.53, by 50% and awards Plaintiff $712,303.27.

Costs

Plaintiff seeks costs in the amount of $127,422.46. This figure includes costs incurred in connection with the arbitration in the amount of $59,471.66, which, for the reasons identified with respect to the request for attorneys' fees incurred in connection with the arbitration, must be immediately deducted from any award. The maximum award of costs sought is therefore reduced to $67,950.80.

In this vein, Plaintiff asserts that its costs are not limited to those permitted under Fed. R. Civ. P. 54, because Paragraph 7(b) of the SRA allows for costs as within Plaintiff's permitted recovery for breach of contract. Defendants assert that Plaintiff's entitlement to costs is limited to those permitted under Rule 54. The Court agrees with Plaintiff. In *Crawford Fitting Co. v. J.T. Givvons, Inc.,* 482 U.S. 437 (1987), the Supreme Court held "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's" costs, district courts are limited with respect to an award of costs by statute. District courts in this Circuit often award costs over and above those authorized by Rule 54 on the basis of contractual provisions. *See Bernhard-Thomas Bldg. Systems, LLC v. Weitz Co., LLC*, 2011 WL 5222682, at *7 (D. Conn. October 31, 2011) (Rule 54 and 28 U.S.C. §1920 "provide the framework for determining the proper award of statutory costs, available to the prevailing party in all cases, but do not apply if a contractual provision authorizes costs and expenses, as part of an attorney's fee award"); *see also, Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.,* No. 04-CV-3854 (LAK) (AJP), 2008

WL 4833025, at *8 (S.D.N.Y. Nov. 3, 2008); *Rangolan v. County of Nassau,* 370 F.3d 239, 250 (2d Cir.2004) ("[T]he district court has no discretion to award costs not authorized by statute or contractual provision") (internal citations omitted).

Plaintiff offers the Affidavit of Mr. Essagoff. Attached as Exhibit D[4] to the Affidavit is a spreadsheet of invoices for "Miscellaneous depositions, witness costs, etc." It totals $38,955.37 and attached to the spreadsheet are the actual invoices. These costs are awarded.

Plaintiff offers the billing statements from his various counsel, each of which sets forth the "expenses" incurred and passed on to Plaintiff. The Court has reviewed this documentation for the period January 1, 2019 through the date of the jury's verdict. These expenses total $24,585.65 and they are awarded.[5]

**Conclusion**

For the foregoing reasons, Plaintiff is awarded attorneys' fees in the amount of $712,303.27 and costs in the amount of $63,541.02, for a total award of **$775,844.29**, which shall be paid to Plaintiff's counsel within 60 days of this Order.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of January 2024.

    /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[4] The Affidavit does not actually reference any Exhibit D. However, the attachment at Exhibit D appears to coincide with the description in the Affidavit of Exhibit C. The content of Exhibit C is not explained but in any event references invoices from 2018 which the Court does not award. Accordingly, the $2,000 reflected in the Exhibit C Invoice is not awarded.

[5] The Court does not award fees in connection with Plaintiff's Supplemental requests for fees premised upon post-trial litigation and briefing. Accordingly, Plaintiff's motions at ECF Nos. 299, 306 and 326 are DENIED. Neither Plaintiff nor Defendants prevailed in their post-trial substantive motions, with the exception of the attorneys' fees issue. As such, in the Court's view, whatever time was spent by Plaintiff trying to revive the Chapter 93A claim, though sought, cannot be awarded. Nor is the Court inclined to dissect the billing records to distinguish between Plaintiff's failed post-trial efforts and Defendants' failed post-trial efforts.